# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

PETER D. KINDER,                                  )
MISSOURI LIEUTENANT GOVERNOR,                     )
                                                  )
DALE MORRIS,                                      )
                                                  )
ROBERT O. OSBORN                                  )
                                                  )
GERALDINE F. OSBORN                               )
                                                  )
SAMANTHA HILL,                                    )
                                                  )
JULIE KEATHLEY,                                   )
individually and as parent and guardian for      )
M.K, her minor son,                               )
                                                  )
                    Plaintiffs,                   )
                                                  )   Cause No: 1:10-cv-00101-RWS
v.                                                )
                                                  )
TIMOTHY F. GEITHNER,                              )
SECRETARY OF TREASURY,                            )
                                                  )
KATHLEEN SEBELIUS,                                )
SECRETARY OF HHS,                                 )
                                                  )
ERIC H. HOLDER, JR.,                              )
ATTORNEY GENERAL                                  )
                                                  )
HILDA L. SOLIS,                                   )
SECRETARY OF LABOR,                               )
                                                  )
                    Defendants.                   )

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  DEFENDANTS IGNORE THE STANDARD TO BE APPLIED BY THE
     COURT IN RULING ON THEIR MOTION...................................................2

III. EACH OF THE NINE CLAIMS ALLEGES FACTS SUFFICIENT TO
     ESTABLISH BOTH (1) THE PLAINTIFF'S STANDING AND (2) THE
     ESSENTIAL ELEMENTS OF A CLAIM FOR RELIEF.................................3

     A.   Contrary to Defendants' Assertions, Count One Does Not Seek Redress on
          Behalf of the State of Missouri, but Instead Alleges That the Act Interferes
          With Mr. Kinder's Performance of His Own Duties...............................3

     B.   Mr. Kinder Also Has Standing to Bring Count Two, Because it Alleges a
          Direct Economic Injury to Himself Personally .....................................4

     C.   Count Three Alleges That the Act Endangers a Specific Right Plaintiff
          Keathley Enjoys as a Citizen of Missouri, Contrary to the Federal
          Constitution ...........................................................................................6

     D.   Defendants' Cursory Attempt to Attack Count Four on Standing Grounds
          is Unsupported by Law...........................................................................8

     E.   The Fifth Claim For Relief Asserts a Claim Which Multiple Federal
          Courts Have Already Found to be Meritorious at Both the Pleading and
          Summary Judgment Stage .......................................................................9

     F.   Defendants Fail to Address – Much Less, Demonstrate a "Defect" in –
          Either the Sixth or Ninth Claims for Relief...........................................11

     G.   Defendants Admit the Gravaman of the Seventh Claim for Relief, Namely
          that the Act Discriminates In the Federal Payments for Medicare
          Advantage Based Solely on (Impermissible) Geographic Considerations...........12

     H.   The Allegations of the Ninth Claim for Relief are Essentially Factual in
          Nature and are Consequently Inappropriate for Evaluation at the Pleading
          Stage ......................................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*520 Michigan Ave. Associates, Ltd. v. Devine*,
    433 F.2d 961 (7th Cir. 2006) ...................................................................... 8

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
    569 F.3d 383 (8th Cir. 2009) ...................................................................... 3

*Commonwealth of Virginia v. Sebelius*,
    728 F.Supp. 2d 768 (E.D. Va. 2010) ........................................................ 11

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 - 44 (2006) ............................................................................ 8

*Eckert v. Titan Tire Corp.*,
    514 F.3d 801 (8th Cir. 2008) ...................................................................... 3

*Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*,
    187 F.3d 941 (1999) .................................................................................. 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................... 4

*McAuley v. Fed. Ins. Co.*,
    500 F.3d 784 (2007) .................................................................................. 10

*McCulloch v. Maryland*,
    17 U.S. 316 (1819) ...................................................................................... 7

*Minnesota Senior Federation v. United States*,
    273 F.3d 805 (8th Cir. 2001) .............................................................. 13, 14

*Neitzke v. Williams*,
    490 U.S. 319 (1989) .................................................................................... 3

*Nolles v. State Comm. for Reorg. of School Dists.*,
    524 F.3d 892 (8th Cir. 2008) .................................................................. 8, 9

*Parkhurst v. Tabor*,
    569 F.3d 861 .............................................................................................. 3

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) .................................................................................... 3

*State of Florida v. United States Dept. of Health and Human Services*,
    2010 WL 2011620 (N.D. Fla. 2010) ........................................................ 11

**STATE STATUTES**

R.S.Mo. § 376.1224(2) .................................................................................... 8

**TABLE OF AUTHORITIES**
(continued)

Page

**RULES**

Fed. R. Civ. Pro. 12(b)(6)............................................................................................11
Fed. R. Civ. Pro. 12(d) ...............................................................................................10

**OTHER AUTHORITIES**

PPACA's "Individual Mandate" .....................................................................................1

## I.      INTRODUCTION

Defendants seek to dismiss – without any consideration of the merits – a lawsuit by Missouri citizens challenging a law which unconstitutionally reduces their existing health care insurance coverage.

As set forth in the First Amended Complaint (the "FAC"), the Patient Protection and Affordable Care Act ("PPACA") requires Missouri citizens to buy health insurance policies they do not need and do not want, as is the case with plaintiffs Samantha Hill and Peter Kinder personally (Counts Five, Six and Nine).  It also jeopardizes the coverage already enjoyed by others, like Missouri senior citizens Dale Morris, and Robert and Geraldine Osborn, who will actually see their existing Medicare Advantage coverage dramatically reduced while their counterparts residing in certain Florida counties get to keep their current level of Medicare Advantage coverage (Count Seven).  PPACA also means those Missouri families with autistic children – such as Julie Keathley's family – are in jeopardy of losing their existing insurance coverage for behavioral therapy (Count Three).

The federal government wants to slam the door of this federal court house in the face of these Missouri citizens by claiming they have no standing to present their constitutional claims to this Court.  As plaintiffs show below, these Missourians not only have standing to bring their complaints before this Court, but their claims are meritorious.  In fact, some of plaintiffs' claims (like their challenge to PPACA's "Individual Mandate" provision in Count Five) have already withstood the government's motions to dismiss based on similar arguments brought in other federal courts (one of which entered summary judgment striking down the Individual Mandate as unconstitutional).

1

In opposing the Motion, these Missouri citizens are not asking this Court to rule in their favor on the merits. Rather, they are just asking this Court to allow them to present their constitutional arguments.

The Court should deny defendants' request for two important reasons: first, the FAC alleges particularized and concrete injury to specific Missouri citizens and those who are similarly situated, raising issues which involve primarily factual disputes which must be addressed at summary judgment or at trial. Second, the importance and novelty of the issues presented make dismissal at this initial pleading stage particularly inappropriate.

PPACA represents an unprecedented exercise of Congressional power under the Commerce Clause. Never in the history of our nation has Congress adopted such sweeping legislation reordering every American's healthcare insurance and mandating citizens to purchase a federally defined insurance policy. Nor has Congress ever so substantially re-ordered the traditional role of states regulating health insurance sold to their citizens. Consequently, there is no existing constitutional precedent for many of PPACA's provisions, and resolving challenges to PPACA will necessarily require federal courts to evaluate new theories and novel applications of constitutional principles. The profound impact of PPACA counsels against hastily dismissing these claims at this preliminary pleading stage of this case. Plaintiffs should be allowed opportunity to demonstrate to the Court, through the introduction of evidence and argument on the merits, how PPACA as implemented particular to their situation results in a violation of their Constitutional rights.

## II. DEFENDANTS IGNORE THE STANDARD TO BE APPLIED BY THE COURT IN RULING ON THEIR MOTION.

This Court's task on a motion to dismiss is a narrow one, only undertaken to determine whether the complaint has alleged sufficient grounds that, assuming they are true, entitle the

2

plaintiffs to relief.  A complaint must allege "only enough facts to state a claim to relief that is plausible on its face."  *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009).  Moreover, the court must accept as true "all the plaintiff's well pleaded allegations." *Parkhurst v. Tabor*, 569 F.3d 861, 865 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). The allegations of the complaint should be construed "liberally in the light most favorable to plaintiff."  *Eckert v. Titan Tire Corp*., 514 F.3d 801, 806 (8th Cir. 2008).  Dismissal cannot be based on "a judge's disbelief of a complaint's factual allegations."  *See Neitzke*, 490 U.S. at 327; *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (complaint may proceed even if it appears that relief "is very remote and unlikely").

Defendants fail to give even a passing nod to this legal standard and premise their motion on factual assumptions and substantive argument not properly considered in a motion to dismiss. These pleading standards are most important in the present case, where defendants seek dismissal at the earliest pleading stage of a lawsuit which raises important and novel questions of constitutional law and fact regarding one of the most significant pieces of federal legislation in decades.

**III.     EACH OF THE NINE CLAIMS ALLEGES FACTS SUFFICIENT TO ESTABLISH BOTH (1) THE PLAINTIFF'S STANDING AND (2) THE ESSENTIAL ELEMENTS OF A CLAIM FOR RELIEF.**

**A.     Contrary to Defendants' Assertions, Count One Does Not Seek Redress on Behalf of the State of Missouri, but Instead Alleges That the Act Interferes With Mr. Kinder's Performance of His Own Duties.**

The First Claim for Relief alleges that PPACA "commandeers Missouri's duly elected state officials and compels them to enforce a federal regulatory healthcare scheme."  (FAC, ¶ 67).  Clearly, the party most directly injured by this aspect of PPACA is the State of Missouri. No one quarrels with that proposition.  However, in their Motion, defendants erroneously conclude that because Missouri is the party most directly injured, no other parties could be

injured.  Defendants are mistaken.  It is one of the most elementary concepts in law that a single act can injure different parties in different ways and to different degrees.  Thus, simply because the State of Missouri would have standing to seek redress from the commandeering PPACA requires, it does not follow (as defendants mistakenly assume) that Missouri is the only party that is injured or that Missouri is the only party who has standing to seek relief.

In their Motion, defendants provide no argument or authority that prevents Mr. Kinder from obtaining relief for the damage PPACA inflicts specifically on him – namely, the interference with, and burden placed on, his performance of his duties as an officer of the State.  That is precisely the relief sought by the First Count:

> Lieutenant Governor Kinder, as a duly-elected constitutional officer of the State of Missouri … enjoy[s] the protections afforded by the United States and Missouri Constitutions, including the right to be free from unwarranted federal intrusion and interference.

(FAC, ¶ 69).  *See also* Affidavit of Mr. Kinder (a copy of which is attached hereto and incorporated herein by reference as Exhibit 1).  Paragraph 69 is narrowly tailored to claim relief only for damage ("unwarranted federal intrusion and interference" in the performance of Mr. Kinder's job duties) which is specific to Mr. Kinder.  Such damage is the touchstone of standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (federal standing requirements are satisfied where: (1) the plaintiff has suffered "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision).

### B.   Mr. Kinder Also Has Standing to Bring Count Two, Because it Alleges a Direct Economic Injury to Himself Personally.

Defendants attack the Second Claim asserting that Mr. Kinder lacks standing to assert a claim on behalf of the State of Missouri.  According to defendants, Count Two seeks to preserve

4

Missouri's unfettered right to compensate its employees and officers (including the provision of healthcare benefits) as it sees fit.

Defendants misconstrue Count Two.  In reality, it alleges that:

…[PPACA] *increases the cost* to Missouri taxpayers of providing health-care coverage to Missouri state employees and elected State officials *and limits the options and choices of health-care coverage available to Lieutenant Governor Kinder* and other Missouri state employees and its elected officials.

(FAC, ¶ 82) (emphasis added).

Despite this straightforward allegation of personal damage directly to plaintiff Kinder, defendants advance two arguments in an attempt to create a "pleading defect" warranting dismissal.  First, defendants argue that, since Mr. Kinder's term expires in 2013, he "is not the right Lieutenant Governor to be making such a claim."  (Motion, p. 5).  However, he has the duty of recruiting and hiring employees to staff the office of the Lieutenant Governor, and the nature and cost of insurance affects his ability to perform this duty.  *See* Affidavit of Mr. Kinder, ¶7.

Second, defendants argue that, even assuming Mr. Kinder has standing, the implementation of PPACA will not affect him because, according to defendants, any plan established or maintained by a State on behalf of its employees qualifies as minimum essential coverage under PPACA.  (Motion, p. 6).  Defendants reach this conclusion by threading their way gingerly through a thicket of statutes (*see* fn. 3, Motion, p. 6), but even if their conclusion is correct, it is beside the point.  The damage alleged by plaintiffs includes, but is not limited to, the implementation of a minimum standard of coverage.  Rather, the FAC asserts that PPACA will increase Missouri's cost of providing healthcare to its officers and employees and/or limit options and choices.  (FAC, ¶ 82).  Simply asserting (as defendants do) that the Missouri plan satisfies PPACA's minimum requirement leaves unanswered the issue of whether PPACA will nonetheless impose administrative and regulatory burdens on the Office of the Lieutenant

5

Governor, which increase the cost to taxpayers and limit the choices of benefit recipients.  The FAC alleges it will.  Defendants have failed to counter that allegation.

**C.**      **Count Three Alleges That the Act Endangers a Specific Right Plaintiff Keathley Enjoys as a Citizen of Missouri, Contrary to the Federal Constitution.**

In a tortured attempt to obtain dismissal of Count 3, defendants offer up a grab-bag of arguments, all of which are designed to support the proposition that Ms. Keathley does not have standing to bring her claim or that of her minor son who suffers from autism.

First, defendants argue that Ms. Keathley's injury (which consists of the federal government taxing – and thereby threatening – her existing right to receive state-mandated, privately funded, medical benefits for her autistic son) is merely an injury she "will share with all the State's taxpayers and is not the kind of personal injury that can create a case or controversy." (Motion, p. 7).   Not so.  The FAC does not allege that Ms. Keathley and her son are asserting a claim held in common with all other Missouri taxpayers.  On the contrary, Ms. Keathley and her son differ uniquely from most Missouri taxpayers in that they require special medical attention to address her son's disability.   In short, they are a special subset of Missouri citizens who will suffer an injury not suffered by the rest of Missouri taxpayers when PPACA's provisions are implemented, because the resulting tax imposed by Section 1311(d)(3)(B)(ii) as amended by Section 10104(e)(1) will, at a minimum, make it more burdensome and expensive for Missouri to continue to provide those benefits – and may well force Missouri to discontinue those benefits entirely.  *See* affidavit of Julie Keathley (a copy of which is attached hereto and incorporated herein by reference as Exhibit 2).  As the FAC plainly alleges, "Julie Keathley and her son, M.K., have the constitutional right to enjoy the benefits of Missouri citizenship without those benefits being directly subject to a penurious tax levied by the federal government."  (FAC, ¶99).

Unable to dispute the obvious threat hanging over Ms. Keathley and her son, defendants simply ignore it, blithely assuming that the tax would have no effect on Ms. Keathley's medical coverage and that Missouri would absorb the financial burden of continuing to provide the subject medical coverage.  Proceeding from that assumption, defendants conclude that because PPACA "requires Missouri, rather than Keathley, to pay for this coverage, that would be a benefit in fact to Keathley, not the injury in fact that is required to show standing."  (Motion, p. 8).[1]  As Chief Justice Marshall observed, "the power to tax is the power to destroy."  *McCulloch v. Maryland*, 17 U.S. 316, 431 (1819).  PPACA's imposition of this sur-tax on Missouri, for autism coverage Missouri that requires Ms. Keathley's private insurer to provide, will likely destroy their coverage.

Lastly, defendants argue that even if the challenged provision does burden and endanger Ms. Keathley's right as a Missouri citizen to enjoy benefits accorded to her by Missouri law, the controversy is not yet "ripe" because PPACA leaves the ultimate definition of the term "essential health benefits" to the Secretary of Health and Human Services, who may eventually decide to include behavioral therapy for autism.  The Court must consider PPACA as it now reads – not as it might someday be supplemented by regulations.  *As currently drafted*, nothing in PPACA provides a benefit remotely equivalent to the one Ms. Keathley and her son enjoy under Missouri law.  Defendants cite a provision of PPACA stating the "essential health benefits" to be covered by PPACA shall include "mental health and substance use disorder services, including behavioral health treatment."  (Motion, pp. 8 – 9 citing Section 1302(b)(1) of PPACA).   Of course, the quoted passage establishes exactly the opposite proposition from the one defendants

---

[1]    Defendants are also wrong in their characterization of the effect of PPACA.  Under Missouri law, Ms. Keathley's private healthcare insurer (not Ms. Keathley) must cover this expense.  (*See* Keathley affidavit).

advance – PPACA's generic coverage of mental health services does not provide the particular behavioral therapy for autistic children required under R.S.Mo. § 376.1224(2).

Moreover, simply because defendants can think of scenarios that might happen before PPACA's 2014 effective date that would leave Ms Keathley's coverage intact does not mean that her claim is not ripe at this time. *See 520 Michigan Ave. Associates, Ltd. v. Devine*, 433 F.2d 961, 962 (7th Cir. 2006) ("Standing depends on the probability of harm, not its temporal proximity. When injury … is likely in the future, the fact that [the complained of harm] may be deferred does not prevent federal litigation now."). Here, the probability of the harm is high. It is fixed in time and impending. Absent action by this Court, the PPACA's sur-tax imposed upon autism coverage now provided to Ms. Keathley and her son is a direct threat to that coverage.

### D.       Defendants' Cursory Attempt to Attack Count Four on Standing Grounds is Unsupported by Law.

In the single paragraph of the Motion addressing Count Four, defendants argue that the mere possibility of future tax increases is insufficient to confer standing on a plaintiff-taxpayer. (Motion, pp. 9-10, citing *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 343 - 44 (2006) and *Nolles v. State Comm. for Reorg. of School Dists*., 524 F.3d 892, 901 (8th Cir. 2008)). In so arguing, defendants entirely miss the point. The injury asserted in Count Four is not a mere speculative tax increase for Missouri citizens that might occur sometime in the future, but rather a specific, quantifiable injury alleged in mathematical detail over the space of two full pages of the FAC (*see* FAC, ¶¶ 115 – 122). Completely ignoring these detailed factual allegations of damage (which are amply sufficient to confer standing and which require adjudication by a jury), defendants fail to provide any substantive discussion of the allegations at all, and instead dismiss them as speculative without any analysis. That is clearly insufficient to carry defendants' burden of demonstrating the Fourth Claim for relief as insufficient as a matter of law.

8

More fundamentally, defendants ignore the unprecedented nature of the legislation under review.  As several federal courts have already noted, PPACA expands the exercise of Congressional power into uncharted territory, raising conflicting claims of federal and state sovereignty never previously addressed by the courts.   The Fourth Claim for relief raises precisely such a conflict, alleging that PPACA trespasses on  specific provisions of the Missouri Constitution, including Article III, §18 and §36 (which provides these Missouri citizens protection by limiting the tax Missouri may impose upon them).  Defendants provide the Court no legal authority even remotely relevant to the implementation of a federal law that purports to require a sovereign State to violate its own Constitution.

### E.     The Fifth Claim For Relief Asserts a Claim Which Multiple Federal Courts Have Already Found to be Meritorious at Both the Pleading and Summary Judgment Stage.

Defendants' attempt to obtain dismissal of the Fifth Claim for relief by misconstruing the allegations to make the claim seem "defective."  Once again, the best rejoinder is to read the FAC and what it actually alleges (instead of what defendants claim it does).

In the Fifth Claim for relief, Ms. Hill alleges PPACA mandates that she buy a specific, federally designed insurance policy (the so-called "Individual Mandate"), and that this mandate exceeds Congress' authority under the Commerce Clause.  (FAC, ¶¶ 135 – 137).  Ms. Hill alleges *"[t]o the extent she is required* to acquire health-care coverage," she would purchase only high-deductible "major medical" or "catastrophic" health insurance coverage (*Id*., ¶ 139) (emphasis added) that does not include maternity and newborn care, mental health and substance use disorder services, and other unnecessary coverage.

Defendants seize on Ms. Hill's statement and attempt to give it the contrary meaning.  According to defendants, Ms. Hill *unqualifiedly* desires to have catastrophic coverage.  Therefore (they reason), PPACA does not deprive her of any rights because "she will be under

no obligation to have any insurance policy other than a major medical plan, which she desires to have."  (Motion, p. 11).

There are two problems with this statement.  First, it is an outrageous mischaracterization of what Ms. Hill actually alleges, as indicated by the plain language of Paragraph 139 of the FAC.  Second, it evinces a troubling disregard for the Constitution.  Apparently, defendants assume that, as long as Ms. Hill may have bought <u>some</u> insurance – even though not the coverage mandated by PPACA – the constitutionality of PPACA's mandate that she purchase different coverage is irrelevant.

In their final analysis, defendants attempt to put words in Ms. Hill's mouth.  Concurrent with this Opposition, Ms. Hill has filed an affidavit[2] in which she flatly rejects defendants' "interpretation" of her allegations.  Among other things, Ms. Hill testifies:

> "I do not want to participate in the 'health care system' established and defined by [PPACA]."  (Hill Aff., ¶ 15);

> [PPACA's] mandates that I purchase a certain health care insurance which includes coverage I do not want to purchase." (*Id.*, ¶ 16); and

> I wish to exercise my legally protected right pursuant to the Missouri Health Care Freedom Act to not purchase the health insurance policy mandated by [PPACA]." (*Id.*, ¶ 17).

*See* Affidavit of Samantha Hill (a copy of which is attached hereto and incorporated herein by reference as Exhibit 3).

---

[2]     Where "matters outside the pleadings" presented in the course of a motion to dismiss are considered prior to a ruling on the motion, the motion must be converted to a summary judgment motion.  *See* Fed. R. Civ. Pro. 12(d).  In the Eighth Circuit, "matters outside the pleadings" include "***any*** written or oral evidence in support of or in opposition to the pleading that provide some substantiation for and does not merely reiterate what is said in the pleadings."  *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 787 (2007).  This rule applies to matters raised by either party. *Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 187 F.3d 941, 948-49 (1999) (upholding trial court's conversion of motion to dismiss into a summary judgment motion based on new allegations made by plaintiffs in opposition to motion to dismiss).

At a minimum, PPACA's individual mandate gives rise to a claim for relief on the merits. *See State of Florida v. United States Dept. of Health and Human Services*, 2010 WL 2011620 (N.D. Fla. 2010) (denying Rule 12(b)(6) motion to dismiss claim challenging "Individual Mandate" provision of PPACA). One federal court has already ruled this provision of PPACA to be unconstitutional *as a matter of law* and entered summary judgment against the Government. *See Commonwealth of Virginia v. Sebelius*, 728 F.Supp. 2d 768 (E.D. Va. 2010). Thus, under the liberal pleading standards applied by courts in the Eighth Circuit, the Fifth Claim for relief raises a justifiable controversy and easily survives the present motion to dismiss.

Additionally, as the government itself noted, Mr. Kinder's current term as Missouri's Lieutenant Governor expires in January 2013. Mr. Kinder has no assurance he will be covered under Missouri's insurance plan after this date. If he is not, he will be subject to PPACA's individual mandate provisions. (*See* Kinder affidavit). In this respect, Mr. Kinder joins Samantha Hill in counts five, six, and nine challenging that provision of PPACA.[3]

## F.     Defendants Fail to Address – Much Less, Demonstrate a "Defect" in – Either the Sixth or Ninth Claims for Relief.

In their Motion, defendants sweep all three of Samantha Hill's (and other similarly situated plaintiffs) claims for relief into a single section, and then address only one of those claims (the Fifth Claim for Relief). Because they wrongly assume that Ms. Hill would purchase insurance that satisfies the minimum amount required by PPACA, they conclude that she would not suffer harm under *any* legal theory. Resting on this false assumption, defendants elect to ignore the Sixth and Ninth claims for relief. Since defendants fail to establish (or even assert) that there is any defect in the remaining claims for relief (the Sixth and Ninth claims for relief), the Motion should be summarily denied as to those claims.

---

[3]       *See* FAC ¶¶127 and 148, where these counts incorporate prior claims.

LDR/319536.1

Each of these two claims sets forth facts necessary to entitle Ms. Hill to relief.  In the Sixth claim for relief, Ms. Hill asserts that the penalty to be imposed by Section 1501 of PPACA violates Article I, §2, §8, and §9 of the United States Constitution (requiring that all taxes imposed by Congress be uniform and apportioned among the States in terms of their population). Because the penalty imposed pursuant to Section 1501 is targeted at, and places a special tax burden on, individuals who choose not to purchase the insurance policy mandated by PPACA, that penalty is a disproportionate direct tax and therefore unconstitutional.  (FAC, ¶¶ 156, 157).

In her Ninth claim for relief, Ms. Hill addresses another unconstitutional aspect of PPACA, asserting that PPACA purports to strip her and other Missouri citizens, without due process of law, of their rights under Missouri's Health Care Freedom Act to make their own decisions concerning healthcare insurance.   (FAC, ¶¶ 207, 213).

These claims are facially viable, and until defendants bestir themselves to address the substance of these claims, Ms. Hill and other Plaintiffs should be allowed to prosecute them.

### G.    Defendants Admit the Gravaman of the Seventh Claim for Relief, Namely that the Act Discriminates In the Federal Payments for Medicare Advantage Based Solely on (Impermissible) Geographic Considerations.

Defendants' discussion of the Seventh Claim for Relief is, frankly, baffling.  Defendants assert that the challenged provision of PPACA (the so-called "Gator-Aid" provision which denies Missouri Medicare enrollees the preferential treatment provided similarly-situated Medicare enrollees living in certain Florida counties) has been amended.  However, in the next breath, defendants admit that the amendment ("Son of Gator-Aid") perpetuates the same improper and unequal treatment of Medicare recipients as did the original version.  (Motion, p. 13 ["There remain geographical differences in the federal payments for Medicare Advantage plans …"]).  *See also* affidavit of Robert Osborn and affidavit of Geraldine Osborn (copies of which are attached hereto and incorporated herein by reference as Exhibits 4 and 5, respectively).

12

In the FAC, plaintiffs Geraldine and Robert Osborn and Dale Morris assert that PPACA's distinction between themselves, on the one hand, and any similarly situated person living in one of the counties afforded preferential treatment under PPACA (whether by "Gator-Aid" or "Son of Gator-Aid" is irrelevant), on the other hand, impermissibly discriminates among American citizens without any rational basis, thereby violating the guarantee of equal protection and privileges and immunities contained the Fourteenth Amendment, as well as the Due Process Clause of the Fifth Amendment.  (FAC, ¶¶ 175, 176, and 179).  The FAC further alleges that this discriminatory scheme is not rationally related to any legitimate governmental purpose.  ((FAC, ¶¶ 175, 176)).

Thus, to demonstrate that the Seventh Claim for Relief warrants dismissal at the pleading stage, defendants should, at a minimum, quote the amended provision and demonstrate that, as a matter of law, this distinction discriminating among Medicare recipients based on their zip code is rationally related to some legitimate governmental purpose.

This is something defendants do not do.  Instead, they launch into a discussion of a case decided long before the passage of PPACA, *Minnesota Senior Federation v. United States*, 273 F.3d 805 (8th Cir. 2001).  There, the court rejected an equal protection challenge to geographic disparities resulting from the reimbursement formula of Medicare Part C because (to use defendants' words) "the government subsidies of a Medicare Part C plan in a given locality depended in part on what traditional Medicare (Medicare Parts A and B) spent on average in that locality."  (Motion, p. 10).  In other words, "a Medicare Advantage plan in a high-Medicare-expense locality would receive more money than a similar plan in an area where Medicare spent less." (*Id.*).

13

What defendants have just done is describe a rational basis for the disparity in the Medicare C payments – precisely the task they fail to do in their Motion in connection with the challenged "Gator-Aid" provision of PPACA.  If there exists some rational basis for PPACA's discrimination among Medicare Advantage enrollees, then defendants have not chosen to share that justification.[4]   Instead, they appear to conclude that, since a disparity in benefits was immune from equal protection challenge in *Minnesota Senior Federation*, then all disparities are therefore automatically immune.  (Motion, pp. 13-14).  Of course, defendants are mistaken. *Minnesota Senior Federation* did not announce a rule that any disparity in Medicare program was immune from equal protection, but rather in *Minnesota Senior Federation*, the disparity was rational and related to a legitimate governmental purpose.  *Minnesota Senior Federation,* 273 F.3d at 808 – 09.  Plaintiffs' equal protection challenge to PPACA is brought because there is no legitimate purpose or rational basis for this disparate treatment of similarly situated citizens.

H.     **The Allegations of the Ninth Claim for Relief are Essentially Factual in Nature and are Consequently Inappropriate for Evaluation at the Pleading Stage.**

Nothing in defendants' Motion more clearly confirms the evidentiary (rather than legal) nature of defendants' attack on the FAC than does defendants' discussion of the Ninth Cause of Action.  (Motion, pp. 14 – 15).  The Ninth Cause of Action alleges that, under PPACA, certain "decisions that were once made solely in the confines of a doctor-patient relationship are now delegated to unelected government 'panels,' violating the autonomy of the doctor-patient

---

[4]     In n. 11, defendants suggest that "one geographical variable element" of Medicare C payments will still be benchmarked on underlying Medicare expenditures, but that the amendment to PPACA will flatten out the disparities.  First, this is a factual point to be considered at trial or summary judgment.   Second, defendant misunderstands plaintiffs' challenge to this provision.  Plaintiffs do not challenge the "benchmark" based formula if it is equally and rationally applied.   Rather, they challenge the provision to this formula, which irrationally subjects these Missouri citizens to reduced Medicare Advantage coverage while granting certain counties – all in Florida – double the benefits.  (*See* affidavits of Robert Osborn and Geraldine Osborn).

relationship." (FAC, ¶ 191). The FAC also alleges that the panels authorized pursuant to Section 4003 of PPACA would be comprised of unelected "federal officials [who would] determine what medical care [plaintiffs] may receive" and that the panels would function to ration medical care, thereby violating the Due Process Clause of the Fourteenth Amendment. (*Id.*, ¶¶ 181 – 185, 195 – 196).

In response to these fact-based allegations regarding how PPACA will abrogate individual liberty and diminish control over one's medical care, defendants respond, in effect, "No, it won't." Defendants argue that the panels' recommendations are not binding and that "patient and physician are free to ignore any panel recommendation" if they disagree. (Motion, p. 15). Of course, these are essentially evidentiary, not legal, issues. At trial (or at the summary judgment phase), plaintiffs will submit testimony regarding the actual manner in which the subject panels will operate, how they will be constituted, and what the likely effect will be on the traditional relationship between patient and physician. These are not matters appropriate for adjudication at the pleading stage.

Dated: January 25, 2011

Respectfully submitted,

**ARENT FOX, LLP**

/s/ Mark F. ("Thor") Hearne, II
Mark F. ("Thor") Hearne, II
Lindsay S.C. Brinton
1050 Connecticut Avenue, NW
Washington, DC 20036-5339
Phone: (202) 857-6000
Fax:     (202) 857-6395
thornet@ix.netcom.com
brinton.lindsay@arentfox.com

Robert C. O'Brien
Steven A. Haskins
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013
Phone: (213) 629-7400
Fax:     (213) 629-7401
obrien.robert@arentfox.com
haskins.steven@arentfox.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 25, 2011, the foregoing document was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Brian G. Kennedy
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C.  20530
brian.kennedy@usdoj.gov


/s/ Mark F. ("Thor") Hearne, II

17