IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| PETER D. KINDER, et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | Civil Action No. 1:10-cv-00101-RWS |
| TIMOTHY F. GEITHNER, et al. | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

REPLY MEMORANDUM
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

Count One . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Count Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Count Three . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Count Four . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Counts Five, Six, and Nine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Count Seven . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Count Eight . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

*520 Michigan Ave. Assoc. v. Devine,*
    433 F.3d 961 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Baldwin v. Sebelius,*
    2010 WL. 3418436 (S.D. Calif. 2010), *cert. denied before judgment*,
    131 S. Ct. 573 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bryant v. Holder*,
    No. 2:10-CV-76-KS-MTP (S.D. Miss. Feb. 3, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Florida ex rel Bondi v. Department of HHS*,
    2011 WL 285683 (N.D. Fla. Jan. 31, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Florida ex rel McCollum v. United States Department of Health & Human Services*,
    716 F. Supp. 2d 1120 (N.D. Fla. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Goudy-Bachman v. Department of Heath and Human Services*,
    2011 WL. 223010 (M.D. Pa. Jan. 24, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Liberty University v. Geithner*,
    2010 WL. 4860299 (W.D. Va. Nov. 30, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

*Minnesota Senior Fed'n v. United States,*
    273 F.3d 805 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*New Jersey Physicians, Inc. v. Obama*,
    2010 WL. 5060597 (D.N.J. Dec. 8, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Public Water Supply District No. 8 v. City of Kearney*,
    401 F.3d 930 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Shreeve v. Obama*,

2010 WL. 4628177 (E.D. Tenn. Nov. 4, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Simon v. Eastern Kentucky Welfare Rights Organization,*
    426 U.S. 26 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Thomas More Law Center v. Obama,*
    720 F. Supp. 2d 882 (E.D. Mich. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. South-Eastern Underwriters Association,*
    322 U.S. 533 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wilder v. Virginia Hospital Association,*
    496 U.S. 498 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## STATUTES

42 U.S.C. § 1395w-23(*o*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

42 U.S.C. § 1395w-23*o*(B)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Pub. L. No. 111-148, 124 Stat. 119  (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 12

Pub. L. No. 111-152, 124 Stat. 1029 (2010)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

Plaintiffs admit that to have standing they need to plead an "'injury in fact'" that is both "concrete and particularized" and "actual or imminent."   Pls' Mem. at 4, *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).   They have not done so.

**Count One**

Plaintiffs acknowledge that the injury their first claim attempts to allege, that Missouri's employees are "commandeer[ed]" to enforce a federal regulatory health-care scheme, Am. Compl. ¶ 67, would be an injury to the non-party State of Missouri.  Pls' Mem. at 3.  Plaintiffs argue, however, that if Kinder is one of the Missouri employees so commandeered he would also be injured and have standing.  *Id*. at 3-4.  However, they have not shown, nor could they show, that Kinder is being commandeered.

In an attempt to support the argument that the Patient Protection and Affordable Care Act ("ACA")[1] inflicts injury specifically on Kinder by commandeering him in particular, plaintiffs point to paragraph 69 of the First Amended Complaint.  *Id*. at 4.  But that paragraph merely argues a legal conclusion that, if Kinder were commandeered, then his rights would be violated. Nowhere in paragraph 69 or anywhere elsewhere in the Amended Complaint do plaintiffs identify as a factual matter what, if any, specific actions Kinder is "commandeered" to take by the ACA.[2]

---

[1] Pub. L. No. 111-148, 124 Stat. 119, as amended by the Health Care and Education Reconciliation Act of 2010, Pub. L.  No. 111-152, 124 Stat. 1029 ("HCERA").

[2] Paragraph 68 of the Amended Complaint attempted to allege two ways in which Missouri and unidentified Missouri officials are commandeered.  Defendants explained in their opening brief why neither example constitutes commandeering.  Defs' Mem. at 4 n.2.  Plaintiffs neither respond to that point nor provide any other concrete example of how Kinder specifically, as opposed to some Missouri official generally, is commandeered to do anything at all by federal law.

**Count Two**

In Count Two plaintiffs had argued that the ACA violated Missouri's rights by telling Missouri how to structure the health benefits it offers its <u>constitutional</u> officers.  Am. Compl. ¶ 72-77.  The motion to dismiss pointed out that Missouri is not a party here asserting its alleged rights, and that (as Kinder acknowledges, Pls' Mem. at 5) his term as Lieutenant Governor will expire in 2013, *i.e.*, before the allegedly unconstitutional provision of the ACA will go into effect.  Accordingly, Kinder and the other plaintiffs lack standing.  *See Bryant v. Holder*, No. 2:10-CV-76-KS-MTP, slip op. at 20-22 (S.D. Miss. Feb. 3, 2011) (Mississippi Lieutenant Governor lacks standing to assert claim that Mississippi is unconstitutionally forced to offer health insurance plans that conform to ACA requirements),

Plaintiffs attempt to resurrect this claim by attaching an affidavit from Kinder asserting that he has to recruit employees for the Lieutenant Governor's staff and that the nature of health insurance coverage is "one of the factors considered" by those employees.  Kinder Aff. ¶ 7.

There are several problems with plaintiffs' new theory.

First, Kinder's affidavit says only that health insurance coverage is "one of the factors considered by current (or potential) employees," Kinder Aff. ¶ 7, not (for example) that even one of those current or potential employees has thought that some ACA-mandated change is a factor, let alone a negative factor, in that alleged calculus.  For all the affidavit discloses, the ACA may make it easier, not harder, to attract employees, because of better, less costly, or more easily accessible insurance options.

Second, while Kinder may be the current supervisor of those who work in the Lieutenant Governor's office, the employer, the party who pays their salaries and benefits and is ultimately

entitled to both employees' efforts and their loyalty, is Missouri, not whoever happens to be

Lieutenant Governor for the time being.  Kinder does not have a personal stake here in how

<u>Missouri</u> compensates those employees..

Third, even if this newly alleged injury were deemed to be Kinder's injury, the newly

alleged injury does not align with plaintiffs' merits theory.  Plaintiffs argue in Count Two that it

violates the Constitution for the federal government to tell Missouri how to structure the health

care benefits it offers to its <u>constitutional</u> officers.  Kinder is such an officer, but the people

Missouri hires to serve in the Lieutenant Governor's Office are not.  If Missouri (or even Kinder)

were "injured" by the federal government allegedly controlling what health benefits those

employees must be offered, it would not be an injury of the type Count Two argues is illegal,

*viz.*, a federal mandate on how state constitutional officers must be compensated.

Fourth, we pointed out that plaintiffs had misread the ACA.  Plaintiffs had grounded their

claimed injury on their supposition as a matter of law that the ACA's definition of "minimum

essential coverage" would compel changes in Missouri's choice of the mix of health care

coverage to offer its officers and employees.  Am. Compl. ¶¶ 80-84.  As we explained, however,

that provision of the ACA does not require any such change.  Defs' Mem. at 6 & n.3.  Plaintiffs

do not challenge this legal conclusion, and instead argue that "even if [defendants'] conclusion is

correct," it is somehow "beside the point."  Pls' Mem. at 5.  But it directly rebuts what had been

plaintiffs' only point.  Both before and after the ACA, both now and in 2014, the design of the

health benefit package Missouri will offer its employees is up to Missouri.  A change that federal

law does not mandate (even in 2014) cannot be affecting recruitment of Missouri employees

today.

-3-

Plaintiffs attempt to avoid this last problem by asserting a second new claim, namely, that they are concerned that some provisions of the ACA, which they do not identify, "nonetheless" will somehow "impose administrative and regulatory burdens on" the Lieutenant Governor's Office. Pls' Mem. at 5-6. But, assuming that these unspecified burdens from unspecified provisions of the ACA are injuries at all, they are injuries to Missouri, not to plaintiffs. And even if one of the plaintiffs had standing to challenge such injuries, plaintiffs' second new claim would fail on the merits. It is constitutional for Missouri, as an employer, to be subject to the same kinds of administrative and regulatory requirements that other large employers will likewise be subjected to. *Florida ex rel McCollum v. United States Dep't of Health & Human Services*, 716 F. Supp. 2d 1120, 1151-54 (N.D. Fla. 2010).

**Count Three**

Plaintiffs' Count Three depends on (*inter alia*) plaintiffs' assumption that behavioral therapy for autism will not be part of the package that must be provided as "minimum essential coverage" under the ACA beginning in 2014. The motion to dismiss pointed out that this is not yet known, since the regulation that will define that package has yet to be promulgated. Defs' Mem. at 8-9. Plaintiffs counter by arguing that the ACA "*as it now reads*" does not require insurance companies to offer such a benefit. Pls' Mem. at 7 (emphasis plaintiffs'). But the challenged provision of the ACA "as it now reads" is not in effect this year, will not be in effect next year, and will not be in effect the year after that. Before it does go into effect – in 2014 – the ACA requires that the Department of Labor submit a report to the Secretary of Health and Human Services on the typical benefits offered by employers. There will be a notice of proposed rulemaking (on which individuals can submit public comments), a review of those public

comments, and then a final regulation.  It will then become known whether behavioral therapy is

included in the definition.  At that point (putting aside, for the moment, the other Article III

problems with the claim) there might be a live dispute.  But there is no such dispute now.  This is

not merely a case where injury, though "deferred," is at least "likely" to occur.  Pls' Mem. at 8,

*quoting 520 Michigan Ave. Assoc. v. Devine*, 433 F.3d 961, 962 (7th Cir. 2006).  The alleged

harm may never occur, in 2014 or any other time.  It is not defendants' burden to prove that there

could never possibly be a live dispute.  It is plaintiffs' burden to at least allege facts showing that

there is a sufficient likelihood that there is a dispute to justify judicial intervention now.  *E.g.*,

*Public Water Supply Dist. No. 8 v. City of Kearney*, 401 F.3d 930, 932-33 (8th Cir. 2005).

Plaintiffs cannot do so, and this dispute is not yet ripe.

     Plaintiffs attempt to deal with their claim's other Article III problem – that they do not

have standing as taxpayers to challenge an alleged "tax" on Missouri, *see DaimlerChrysler*

*Corp. v. Cuno*, 547 U.S. 332 (2006) – by once again switching theories.  The new claim appears

to be not that plaintiffs will be injured as Missouri taxpayers when Missouri pays (what plaintiffs

wrongly call) a "tax" under this provision of the ACA, but that, rather than pay the "tax,"

Missouri will repeal its compulsory coverage law, and that, while this may not injure the other

plaintiffs, it will at least injure plaintiff Keathley, who may want such coverage.  Pls' Mem. at 6-

7.[3]  Plaintiffs' new theory doubles the speculation and contingencies that stand between the

present day and some possible future case or controversy.  Plaintiff Keathley's new claim of

_____

     [3] We phrase it as Keathley "may want" such coverage because, even though our
memorandum pointed out that the Amended Complaint left it unclear whether Keathley
presently has coverage, Defs' Mem. at 10 n.7, Keathley's affidavit still does not state whether
Keathley has health insurance, let alone whether she has one of the kinds of plan for which
coverage of behavioral therapy is now required under Missouri law.

injury now depends not only on the not-yet-known definition of "minimum essential coverage"

but also on predicting one possible reaction by the Missouri legislature (repealing its law) to one

of the possible federal regulatory decisions.  The possibility that Missouri might repeal its law

cannot be predicted with any degree of certainty, and does not give rise to a case or controversy

on the mere chance that it might.[4]  There are too many "ifs" between now and any possible

future injury to Keathley.

**Count Four**

Plaintiffs' Count Four speculates that at some point in the future Missouri will impose

taxes in violation of "specific provisions of the Missouri Constitution."  Pls' Mem. at 9.

That hasn't happened.  Plaintiffs nevertheless argue that, at least for purposes of a

motion to dismiss, it must be assumed that Missouri will one day violate its constitution as long

as plaintiffs allege enough "mathematical detail" that a jury will be able to decide what

---

[4] Keathley argues that repeal of Missouri's  current law by its legislature would become a "reasonable likelihood" if the ACA definition does not end up including behavioral therapy because otherwise Missouri "taxpayers (as opposed to private insurance companies)" would then "bear the costs of [her] son's autism therapy."  Keathley Aff. ¶ 13.  But those private companies do not altruistically give away the policies that provide this coverage; they sell those policies. *See* Missouri Department of Insurance, Financial Institutions and Professional Regulation, *Autism and Related Insurance Resources*, available at http://insurance.mo.gov/consumer/autismFAQ/Autisminsuranceresources.htm (last updated, Feb. 2, 2011) (for individual health plans, "there will likely be an additional cost associated with that coverage" for autism).  Thus, Keathley (and others in her insurance risk pool) would already be paying for coverage under Missouri law now (if Keathley is buying insurance).  To the extent that Missouri's law reflects Missouri's judgment that the expense should not be borne solely by those with autistic children but spread more broadly to other Missourians who buy health insurance, it would be <u>consistent</u> with that view to have the costs spread even more broadly to all Missouri taxpayers.  Thus, the policy underlying Missouri's current law would argue in support of Missouri <u>not</u> repealing its law even in the face of the (hypothetical) future federal definition of behavioral therapy for autistic children as outside minimum essential coverage.  Non-repeal, to be sure, would not be certain, but neither would repeal.

Missouri's future budget will be and will be able to decide what taxes Missouri will some day raise. *Id*. at 8. But juries do not determine what Missouri's budgets and taxes will be. Those decisions will belong to Missouri officials and voters. If (as plaintiffs speculate or argue that a jury can speculate) Missouri's elected officials some day raise taxes in defiance of specific provisions of the Missouri Constitution, plaintiffs' quarrel will be with those officials and the State of Missouri if and when that happens, rather than with the federal government now. It is not enough for plaintiffs to show that some day <u>someone</u> might act to cause them injury. Article III "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Org*., 426 U.S. 26, 41-42 (1976); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992).

Plaintiffs attempt to trace the speculated future violation of the Missouri Constitution to the ACA by arguing that the ACA "purports to require" Missouri to raise taxes in "violat[ion of] its own Constitution" Pls' Mem. at 9. That is not correct. Nothing in the ACA authorizes, much less requires (or "purports" to require), Missouri to raise taxes in a manner that would violate its own constitution. Plaintiffs' argument to the contrary points only to the expenses of the Medicaid program, Pls' Mem. at 8-9, which they argue will be "enormous" and "massive" and lead to "extraordinary" taxation, Am. Compl. ¶¶ 122. But participation by the States in the Medicaid program is <u>voluntary</u>. *E.g.*, *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 502 (1990). Thus, even if plaintiffs were correct that participation by Missouri in Medicaid cannot be

squared with the limits on taxation set forth in the Missouri Constitution,[5] Missouri officials

would have the lawful choice of abiding by the Missouri Constitution and declining to

participate in Medicaid. In short, if Missouri one day raises taxes in a manner that violates its

constitution, it will be because Missouri will have made sovereign decisions that violate its

constitution, not because the defendants even purport to have required any such violation. There

is no case or controversy between the parties now about this speculative future action of a third

party not before the Court.

**Counts Five, Six, and Nine**

Counts Five, Six, and Nine assert various theories attacking the individual responsibility

provision of the ACA. None of the plaintiffs, however, alleges that he or she would otherwise

not buy insurance beginning in 2014 and is currently injured by a requirement that he or she do

so. Therefore, none of the plaintiffs has standing, on any of these theories, to attack the

requirement.[6]

Plaintiffs now argue that defendants "put words in" plaintiff "Hill's mouth," Pls' Mem. at

10, by arguing that she "*unqualifiedly* desires to have catastrophic coverage," *id*. at 9 (emphasis

plaintiffs'). But defendants relied on the words the Amended Complaint itself used, that Hill

"has (and desires to retain) the ability to purchase" health insurance. Am. Compl. ¶ 19

---

[5] Defendants should not for a moment be understood as endorsing or agreeing with plaintiffs' speculations that the ACA will impose enormous financial demands on Missouri on net, but have assumed the point *arguendo* for purposes of the motion to dismiss.

[6] Plaintiffs chide defendants for not addressing the merits theories of these three counts separately. Pls' Mem. at 11-12. But, if, as defendants showed, none of the plaintiffs has standing to challenge the provision, the differences among their merits theories are beside the point.

(emphasis supplied). Hill has now submitted an affidavit, but nowhere in that affidavit does she say that, come 2014, she will not want to buy a major medical plan. All the affidavit says is that she does not want health insurance if it is the health insurance that is "mandated by PPACA," Hill Aff. ¶ 14 (emphasis supplied); *see id*. ¶¶ 15-17. The affidavit does not say – and presumably was carefully drafted not to say – that she does not want to buy major medical insurance at all. Presumably she would and will continue to buy a major medical plan as long as it is a major medical plan regulated by Missouri rather than by the federal government. This is not an objection to buying, or a determination not to buy, health insurance so much as it is merely an objection to having federal regulation of the insurance.

This is a far cry from the merits argument Hill seeks to present – that she cannot unwillingly be required to buy health insurance – and becomes merely an argument about who can regulate health insurance contracts. If that were the argument Hill wished to present, her affidavit might support standing. But if that were Hill's argument then (as we explained in our opening memorandum, Defs' Mem. at 11-12) it would lose on the merits, since it is well established that Congress may regulate insurance contracts under the Commerce Clause. *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533 (1944).

Plaintiff Kinder now belatedly tries to assert an injury from the minimum coverage provision as well. He notes that his current term as Lieutenant Governor, and thus his current employer-provided health insurance, will end in 2013. Pls' Mem. at 11; Kinder Aff. ¶¶ 15-16. But again, what his affidavit does not say is more telling than what it does say. Kinder does not say that he will not obtain insurance with his next job. He does not say that, if he becomes unemployed or if his next employer does not offer insurance, he will not buy such insurance in

-9-

2014. Since Kinder will be 58 by the time his current job ends (*see* Kinder Aff. ¶¶ 2-4), it would

be unlikely that Kinder would decide not to have health insurance. In any event, likely or not,

Kinder does not say that he will not have, or that he will not want, insurance in 2014. That

makes his claim to standing quite unlike cases where individuals were found to have standing to

challenge this provision of the ACA, not only because they did not currently have an insurance

policy whose term extended beyond 2013, but because they also alleged – unlike Kinder – both

that they were determined not to buy such insurance in 2014 and that being required to buy such

insurance in 2014 would affect them now by requiring diversion of their resources from other

uses in order to save for a future insurance purchase.[7]  Instead, Kinder's claim is like those that

courts have found insufficient to support standing to challenge this provision, a bare dislike of

being required to buy insurance in 2014 uncoupled with any reasonable factual prediction that

the individual will not be buying or otherwise covered by insurance in 2014.[8]

---

[7] *Goudy-Bachman v. Dep't. of Heath and Human Services*, 2011 WL 223010, at *5-6 (M.D. Pa. Jan. 24, 2011); *Thomas More Law Center v. Obama*, 720 F. Supp. 2d 882, 888-89 (E.D. Mich. 2010); *Liberty Univ. v. Geithner*, 2010 WL 4860299, at *4-6 (W.D. Va. Nov. 30, 2010); *see Florida ex rel Bondi v. Dep't of HHS*, 2011 WL 285683, at *8 (N.D. Fla. Jan. 31, 2011) (finding standing after construing allegations to be making similar claims); *cf. Bryant v. Holder*, No. 2:10-CV-76-KS-MTP, slip op. at 18-20 (S.D. Miss. Feb. 3, 2011) (finding attempt to plead such standing insufficient).

[8] *Baldwin v. Sebelius*, 2010 WL 3418436 (S.D. Calif. 2010), *cert. denied before judgment*, 131 S. Ct. 573 (2010); *Shreeve v. Obama*, 2010 WL 4628177 (E.D. Tenn. Nov. 4, 2010); *see New Jersey Physicians, Inc. v. Obama*, 2010 WL 5060597, at *4 (D.N.J. Dec. 8, 2010) (rejecting claim to standing where plaintiff did allege that he planned not to buy insurance in 2014, but did not also allege that there was any current financial effect arising from a requirement that he do so).

**Count Seven**

In Count Seven, plaintiffs had challenged one provision of the ACA, which plaintiffs call "Gator-Aid." Defendants pointed out that this "Gator-Aid" provision had been repealed. Defs' Mem. at 12. In opposing the motion to dismiss, plaintiffs now decide to challenge a different provision and then argue that (no surprise) defendants "fail[ed]" to point out a rational justification for the provision that the Amended Complaint had not challenged in the first place. Pls' Mem. at 12-14.

It is no excuse for their wholesale re-imagining of Count Seven for plaintiffs to argue (*id.* at 12) that, if the provision they challenged was "Gator-Aid," the new provision they challenge is somehow the "Son of Gator-Aid." The two provisions bear no such resemblance to each other. Under the Medicare Advantage payment methodology, payment rates vary by county based on variation in Medicare expenditures in the county. The higher the payment rate is, the more additional benefits beyond those not otherwise covered by Medicare can be provided by a Medicare Advantage plan to its enrollees. Florida has many counties with Medicare Advantage payment rates substantially higher than the average. The repealed "Gator-Aid" provision that the Amended Complaint had challenged was designed to protect above-average Medicare Advantage benefits for a few beneficiaries in certain Florida counties from the effects of payment changes that would have been made under the Senate bill, and thus to keep in place an advantage these Florida Medicare Advantage enrollees had over the average Medicare Advantage enrollee. By contrast the provision plaintiffs now wish that their Amended Complaint had instead challenged, 42 U.S.C. § 1395w-23(*o*), will provide up to a 5% increase in a benchmark rate in many counties, not just or even primarily in Florida, that had below average

-11-

fee-for-service Medicare expenditures, and thus <u>below</u> average benefits.  Rather than preserving

what plaintiffs argue to be an inequity in certain enrollees in Florida getting <u>more</u> generous

benefits than the average Medicare Advantage enrollee, the new provision is intended to

addresses an arguable inequity in Medicare Advantage enrollees in the affected low payment

counties that had been getting <u>less</u> generous benefits than the average Medicare Advantage

enrollee.

Plaintiffs also misconstrue defendants' argument as conceding that the repeal of Gator-

Aid by HCERA "perpetuated the same improper and unequal treatment of Medicare recipients as

did the" Gator-Aid infected provisions of the ACA that never took effect.  Pls' Mem. at 12.

What defendants' memorandum actually explained was that the overall effect of the HCERA's

reforms to Medicare Advantage is to <u>lessen</u> the geographic disparities that had existed under <u>pre</u>-

ACA law, disparities that the Court of Appeals had already upheld against the same kind of

challenge plaintiffs seek to bring here.  Defs' Mem. at 13-14, *citing Minnesota Senior Fed'n v.*

*United States*, 273 F.3d 805 (8th Cir. 2001).  The specific provision plaintiffs now wish they had

challenged does not, as plaintiffs claim in their memorandum (Pls' Mem. at 14 n.4), give some

counties "double the benefits," but merely adds up to 5% to a benchmark for Medicare

Advantage payments that can apply only to counties that, *inter alia*,  had less than average

Medicare fee-for-service expenditures and had a high (25% or above) utilization of Medicare

Advantage.  42 U.S.C. § 1395w-23*o*(B)(3).  Under the standard of *Minnesota Senior*, that newly

challenged provision is plainly rational

**Count Eight**

In Count Eight, plaintiffs argued that section 4003 of the ACA establishes panels.  As

defendants explained (Def's Mem. at 14 & n.12) and as plaintiffs do not dispute, those panels in fact existed prior to the enactment of the ACA.  Plaintiffs argue in the Amended Complaint that section 4003 will authorize the panels to "interfere with the doctor-patient relationship, in that [the panels] direct and require treatment – or non-treatment—in a mandated manner without regard for the patient or the patient's doctor, Am. Compl.  ¶ 188, with the result that "[d]octors and patients are not allowed to make decisions free from intervention, but are instead compelled to discuss and resolve questions of medical care only within the bounds that the federal panels have established," *id*. ¶ 189.  Our response to that *ipse dixit* was characterized by plaintiffs as "in effect, ''No it won't.'"  Pls' Mem. at 15, *characterizing* Defs' Mem. at 15.

Plaintiffs argue that "No, it won't" does not suffice on a motion to dismiss in the face of "fact-based allegations."  Pls' Mem. at 15.  But there are no "facts" or "fact-based allegations" in Count Eight to begin with.

A relevant "fact" or "fact-based allegation" might be something like "Named Plaintiff W on or about some specified date was advised by, and agreed with, his physician X, that he should receive and would pay for Treatment Y.  Yet on the very next day, federal panel Z told W that he could not receive Treatment Y and ordered that physician X not even discuss the treatment, except within the bounds dictated by the panel."  The Amended Complaint does not say anything like that even though one of the challenged panels has been operating since the administration of Ronald Reagan, so that, if it were indeed obliterating dissent from its recommendations, there has been time enough for that to have occurred.  If the Amended Complaint had made such an allegation of fact, the panel's attorney might counter with an argument of law that section 4003 of the ACA allows the panel to do that (at least the panel's attorney might make that argument if

-13-

he did not first read the statute).  But defendants do not make that legal argument that the ACA, or any other provision of law, authorizes the panels to shut down debate and control treatment options.  So plaintiffs make that argument of law for defendants.  With that straw man in place, plaintiffs can then pummel it with the argument they want to make, that section 4003, as so construed, would be unconstitutional.

Plaintiffs' argument that section 4003 authorizes the panels to forbid debate or treatment is a conclusion of law, not a fact, or a "fact-based" allegation.  The Court is under no obligation to accept plaintiffs' conclusion: "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Defendants are thus entitled, even on a motion to dismiss, to challenge plaintiffs' reading of the statute. Since, plaintiffs' construction of section 4003 finds no support in the actual language or any plausible interpretation of that provision, the right answer to plaintiffs' claim that section 4003 will forbid discussion or treatment is indeed, "No, it won't."

Conclusion

For the reasons stated above and in the memorandum supporting defendants' motion to dismiss, defendants' motion to dismiss should be granted.

Respectfully submitted,

TONY WEST
Assistant Attorney General

RICHARD G. CALLAHAN
United States Attorney

SHEILA M. LIEBER
Deputy Branch Director

/s/ *Brian G. Kennedy*
BRIAN G. KENNEDY (D.C. Bar No. 228726)
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Tel.: (202) 514-3357 Fax: (202) 616-8470
Email:  Brian.Kennedy@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2011, the foregoing was filed

electronically with the Clerk of Court to be served by operation of the Court's

electronic filing system upon the following:

> Mark F. ("Thor") Hearne, II
> Lindsay S.C. Brinton
> 1050 Connecticut Avenue, NW
> Washington, DC 20036-5339
> Phone: (202) 857-6000
> Fax: (202) 857-6395
> thornet@ix.netcom.com
> brinton.lindsay@arentfox.com
>
>
> Robert C. O'Brien
> Steven A. Haskins
> 555 West Fifth Street, 48th Floor
> Los Angeles, CA 90013
> obrien.robert@arentfox.com
> haskins.steven@arentfox.com
>
> Attorneys for Plaintiffs


> /s/ Brian G. Kennedy
> Brian G. Kennedy