UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

PETER KINDER, et al.,                    )
                                         )
        Plaintiffs,                      )
                                         )
v.                                       )        Case No.: 1:10 CV 101 RWS
                                         )
TIMOTHY GEITHNER,                        )
SECRETARY OF TREASURY, et al.,           )
                                         )
        Defendants.                      )

## MEMORANDUM AND ORDER

This litigation is one of many cases filed throughout the United States that raise

constitutional challenges to the Patient Protection and Affordable Care Act ("the PPACA" or

"the Act").[1]

This matter is before me on Defendants' Motion to Dismiss Plaintiffs' Amended

Complaint [#30].  Defendants' motion seeks dismissal of this action pursuant to Rules 12(b)(1)

and 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants argue this matter should be

dismissed because I lack subject matter jurisdiction over Plaintiffs' claims and the Amended

Complaint fails to state a claim upon which relief can be granted.  Because I find that I do not

have subject matter jurisdiction, I must dismiss this case.

## I.      Introduction

This challenge to the PPACA was filed by seven Missouri citizens in their individual

capacities.  Plaintiff Peter Kinder has health insurance through the health-care plan provided to

---

[1]Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (Mar.
23, 2010), as *amended by* the Health Care and Education Reconciliation Act of 2010, Pub. L. No.
111-152, 124 Stat. 1029 (Mar. 30, 2010).

Missouri's elected state officials.  Plaintiffs Dale Morris, Robert Osborn and Geraldine Osborn

are eligible to receive health insurance benefits under Medicare and to purchase supplemental

Medicare coverage called "Part C" or "Medicare Advantage."  Plaintiff Samantha Hill is 21 years

old and does not currently have health insurance.  Plaintiff Julie Keathley is the mother of

Plaintiff M.K. who is eight years old and suffers from autism.  Defendants are Timothy Geithner,

Secretary of the United States Department of Treasury, Hilda Solis, Secretary of the United

States Department of Labor, Eric Holder, United States Attorney General, and Kathleen Sebelius,

Secretary of the United States Department of Health and Human Services.  Each Defendant is

sued in their official capacity.

Plaintiffs advance nine causes of action in their Amended Complaint challenging several

provisions of the Act.  Plaintiffs ask me to enjoin Defendants from enforcing the challenged

provisions and declare those provisions unconstitutional.  Defendants argue this case must be

dismissed because I lack subject matter jurisdiction over this case.

## II.   Legal Standard

The purpose of a Federal Rule of Civil Procedure 12(b)(1) motion is to allow the court to

address the threshold question of jurisdiction, as "judicial economy demands that the issue be

decided at the outset rather than deferring it until trial." Osborn v. United States, 918 F.2d 724,

729 (8th Cir. 1990).  The first step for a court determining a 12(b)(1) motion is to "distinguish

between a 'facial attack' and a 'factual attack.'" Id. at 729 n. 6.  "[A] crucial distinction, often

overlooked, [exists] between 12(b)(1) motions that attack the complaint on its face and 12(b)(1)

motions that attack the existence of subject matter jurisdiction in fact, quite apart from any

pleadings." Mortensen v. First Fed. Sav. & Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977).  In the

current motion, Defendants make a facial attack to subject matter jurisdiction.  Accordingly, I must restrict myself "to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  Osborn, 918 F.2d at 729 n. 6.[2]

In ruling on a motion to dismiss under Rule 12(b)(6), I must accept as true all factual allegations in the complaint and view them in the light most favorable to Plaintiffs.  Fed. R. Civ. P. 12(b)(6); Erickson v. Pardus, 551 U.S. 89, 94 (2007).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## III.   Discussion

Plaintiff Kinder currently serves as the elected Lieutenant Governor of the State of Missouri.  His term expires in 2013.  In the original Complaint Kinder alleged that he brought this case *both* in his individual capacity and "in his statutory capacity as Lieutenant Governor charged with being the advocate for Missouri's elderly."[3]  Missouri Attorney General Chris Koster filed a motion to intervene in this case on behalf of the State of Missouri in July 2010 because he claimed that only the Missouri Attorney General has statutory authority to bring a suit on behalf of Missouri.  On August 18, 2010, Plaintiffs filed an Amended Complaint which

_____

[2]For this reason, I cannot consider the supplemental affidavits filed by Plaintiffs in opposition to dismissal.  Plaintiffs incorrectly assert in their Response that their affidavits convert the current motion to dismiss into a motion for summary judgment.  Even if Defendants had asserted a factual challenge under Rule 12(b)(1), my review of documents outside the pleadings would not convert the current motion into a motion for summary judgment.  Osborn, 918 F.2d at 729.

[3]Complaint, Docket No. 1 at 2.

specifically indicated that Kinder "is bringing this case *in his individual capacity* and as an advocate for the elderly" and that he "is not bringing this case on behalf of the State of Missouri as a state."[4]   After the Amended Complaint was filed, Missouri Attorney General Koster was permitted to withdraw from the case.   Because Kinder is only pursuing claims on his own behalf and not on behalf of the State of Missouri, I will strike the reference to Kinder as the Missouri Lieutenant Governor from the case caption.   <u>See</u> Fed. R. Civ. P. 12(f)(1).   Kinder also purports to bring his claims in his capacity as "an advocate for the elderly."   None of the claims in the Amended Complaint appear to rely on Kinder being an advocate for the elderly to establish standing.   As a result, I do not reach the issue of whether Kinder would have standing as an advocate of the elderly.

Defendants have filed a Motion For Leave to File Supplemental Memorandum in Support of Motion to Dismiss [#35].   In this motion, Defendants seek to advise me that subsequent to briefing, the Centers for Medicare & Medicaid Services made determinations that provide an additional basis for me to find that Count VII is not justiciable at this time.   Memoranda in addition to a motion to dismiss, response and reply brief "may be filed by either party only with leave of Court."   E.D. Mo. L.R. 4.01(C).   Because the determination by the Centers for Medicare & Medicaid Services squarely impacts whether I have subject matter jurisdiction over Count VII, I will grant Defendants' motion.

Finally, subsequent to briefing, Plaintiffs filed two Notices of Supplemental Authority [#34 and #36].   To the extent the cases identified in Plaintiffs' Notices are applicable to the resolution of the current motion, they will be considered.

---

[4]Amended Complaint, Docket No. 16 at 4 (emphasis added).

-4-

## A.  Subject Matter Jurisdiction

As always I must address jurisdictional issues before I assess the merits of Plaintiffs' claims.  Federal jurisdiction is limited to the power authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.  Zanders v. Swanson, 573 F.3d 591, 593 (8th Cir. 2009) (quoting Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)). "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471, (1982).  The doctrines of standing, ripeness, and mootness must be employed to determine if a case if justiciable.  Zanders, 573 F.3d at 593 (quoting Schanou v. Lancaster County Sch. Dist. No. 160, 62 F.3d 1040, 1042 (8th Cir. 1995)). If a plaintiff does not have standing, if a claim is not ripe, or a claim has been rendered moot, I do not have subject matter jurisdiction to hear the case.  That a case may present issues that are particularly "important" or controversial does not cure a complaint's failure to present an actual case and controversy.

### 1. Standing

There are three elements a plaintiff must satisfy in order to establish standing.

> "First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal citations and alterations

omitted). "[E]ach element must be supported in the same way as any other matter in which the

Plaintiff bears the burden of proof, i.e., the manner and degree of evidence required at the

successive states of litigation." Id. at 561. "At the pleading stage, general factual allegations of

injury, resulting from the Defendants conduct may suffice." Id. In other words, allegations of

injury are liberally construed and assumed to be true at this stage of the proceedings. However,

> "[i]t is a long-settled principle that standing cannot be inferred
> argumentatively from averments in the pleadings, but rather must
> affirmatively appear in the record. And it is the burden of the party
> who seeks the exercise of jurisdiction in his favor clearly to allege
> facts demonstrating that he is a proper party to invoke judicial
> resolution of the dispute. Thus [Plaintiffs] in this case must allege
> facts essential to show jurisdiction. If they fail to make the necessary
> allegations, they have no standing."

FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990) (internal citations and punctuation omitted).

(a.)    **Count I**

In Count I Plaintiffs allege the PPACA is unconstitutional because it "commandeers

Missouri's duly elected state officials and compels them to enforce a federal regulatory health-

care scheme." More specifically, Plaintiffs allege Section 1314 requires states "to implement and

maintain 'reinsurance' programs for the individual and small group market private insurance

plans that experience a higher level of claims." Plaintiffs further allege Section 1513 "requires

[Missouri] to provide...a 'qualified health benefit plan' or face a substantial financial penalty."

Plaintiffs allege the PPACA violates the Tenth Amendment and Kinder argues, for the first time

in his Response, that he is specifically injured because the PPACA places a burden on the

performance of his duties as an elected official of Missouri.

Defendants argue that Plaintiffs lack standing to assert a claim that Missouri is being

commandeered into enforcing federal law in violation of the Tenth Amendment.  Defendants also argue that dismissal is appropriate because the Amended Complaint is devoid of any factual allegations as to what actions Kinder is being forced to take or any other factual allegation from which I could conclude that Kinder, or any of the other Plaintiffs, is injured as alleged in Count I.

To whatever extent Plaintiffs allege an injury to the sovereign interests of the State of Missouri, they do not have standing to bring these claims because Plaintiffs, including Kinder, bring this case as individuals.  As the Supreme Court has observed, a plaintiff "generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties."  Valley Forge, 454 U.S. at 474.  "[A] private party does not have standing to assert that the federal government is encroaching on state sovereignty in violation of the Tenth Amendment absent the involvement of a state or its instrumentalities."  United States v. Hacker, 565 F.3d 522, 526 (8th Cir. 2009).  While the State of Missouri may have standing to assert the claim in Count I, it is not a party to this action and Plaintiff Kinder and the other Plaintiffs do not and cannot bring this action on behalf of Missouri.  As a result, Plaintiffs do not have standing to assert a violation of the Tenth Amendment in Count I.

Kinder argues he has suffered an injury by the PPACA's "interfer[ing] with, and [placing a] burden on, his performance of his duties as an officer of the State."[5]  However, this argument fails because Kinder pursues his claims in this case only as an individual and not as the Lieutenant Governor of Missouri.

Because Plaintiffs attempt to pursue claims that uniquely belong to the State of Missouri

---

[5]Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, Docket No. 32 at 4.

and have failed to establish a violation of their individual rights, they do not have standing to

pursue a claim that the PPACA violates the Tenth Amendment.  I will therefore dismiss Count I.

**(b.)     Count II**

In Count II Plaintiffs allege Section 1513 of the Act is unconstitutional because it

interferes with the right of Missouri citizens and voters to determine the compensation Missouri

provides its state officials and state employees.[6]  Missouri provides constitutional officers and

state employees with health care pursuant to the Missouri Consolidated Health Care Plan.

Plaintiffs argue that because Section 1513 requires Missouri, as an employer, to provide a

qualified health benefit plan or pay a penalty, it mandates part of the compensation package for

elected state officials.  Plaintiffs argue the PPACA may "impose administrative and regulatory

burdens on the Office of the Lieutenant Governor" which will in turn "increase the cost to

taxpayers and limit the choices of benefit recipients."  Kinder argues that Section 1513 will limit

the healthcare choices available to him.  In his affidavit, Kinder asserts a new claim, not found in

the Amended Complaint, that he is injured because he has the duty to recruit and hire employees

to staff the Office of the Lieutenant Governor and the nature and cost of insurance affects his

ability to perform this duty.

Defendants argue that Plaintiffs do not have standing to assert such a claim.[7]  Kinder does

_____

[6]The Amended Complaint does not specify which Plaintiffs are asserting a claim in Count
II.  In an abundance of caution I will consider whether any of the Plaintiffs have standing to
assert the claim in Count II.

[7]Defendants also argue Plaintiffs' argument fails on the merits.  Defendants argue that
where the employer is a state government, any plan "established or maintained for its
employees...by the government of any State" qualifies as minimum essential coverage, and as a
result, Missouri is free to choose the coverage it offers it employees.  Because I find Plaintiffs
lack standing I do not reach the merits of Plaintiffs' claim.

not have standing because he has not alleged that he is injured by the challenged provision. The PPACA does not go into effect until January 1, 2014 and Kinder's term as Lieutenant Governor ends in January 2013. As a result, Kinder's healthcare choices will not be affected and he does not have standing to assert the claim in Count II. Even if I were to consider his new argument that the nature and cost of insurance affects his ability to recruit and hire employees for the Office of the Lieutenant Governor, Kinder would still lack standing. Kinder does not assert that his recruitment and hiring is negatively impacted by the PPACA, but merely that such efforts are affected. This fails to establish that Kinder, as an *individual*, has been injured.

The remaining Plaintiffs have also failed to establish they are injured by Section 1513. Plaintiffs' allegation that the PPACA will increase burdens on the Office of the Lieutenant Governor, which will result in increased costs to Missouri taxpayers, is too speculative and devoid of factual allegations for me to find Plaintiffs have sustained or will sustain an injury arising from Section 1513. Plaintiffs also lack standing because their alleged injury would be the result of an independent action of a third party (the State of Missouri) which is not before the court. Lujan, 504 U.S. at 560-61. Furthermore, Plaintiffs assert a violation of the Tenth Amendment in Count II. "[A] private party does not have standing to assert that the federal government is encroaching on state sovereignty in violation of the Tenth Amendment absent the involvement of a state or its instrumentalities." Hacker, 565 F.3d at 526. It is clear the State of Missouri is not a party to this action and Plaintiffs do not have standing to assert a violation of the Tenth Amendment in Count II.

**(c.)    Counts V, VI, and IX**

In Counts V, VI, and IX Plaintiff Hill asserts various challenges to the PPACA's

requirement to purchase health insurance and the financial penalty that will be assessed if qualifying health insurance is not purchased.  Hill does not currently have health insurance.  In Count V, Hill alleges the PPACA exceeds the power granted to Congress under the Commerce Clause of the Constitution.  In Count VI, Hill alleges the financial penalty imposed upon her if she does not purchase health insurance is unconstitutional.  In Count IX, Hill alleges the PPACA is unconstitutional because it abrogates her rights under the Missouri Health Care Freedom Act[8] by requiring her to purchase a particular type of health insurance.  Defendants argue Hill does not have standing to assert the claims in Counts V, VI, and IX because she has failed to allege an injury.

In Count V, Hill argues the PPACA is unconstitutional because "to the extent she is required to purchase health-care coverage [she] desires to obtain only high-deductible 'major medical' or 'catastrophic' health insurance coverage."[9]  Hill alleges that under Section 1302(e) she does not fall within the definition of citizens who may satisfy their essential minimum coverage with catastrophic health insurance.  Defendants argue Hill does not have standing to assert the constitutional challenge in Count V because she has not alleged an injury.

Hill asserts that Section 1302(e) injures her because she will not be able to satisfy the health insurance requirement by purchasing a catastrophic care plan.  Hill incorrectly argues that under Section 1302(e) a citizen may maintain a catastrophic plan "only if an individual is under 30 years of age *and* certifies that his or her premium payment is more than eight percent of his or

---

[8] M O. ANN. STAT. § 1.330(1) (West 2010).

[9] Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, Docket No. 32 at 35.

her househould income."[10]  Defendants correctly note that a qualifying catastrophic care plan will meet the essential health benefits package requirement if an individual is under 30 years of age *or* meets the tests of 26 U.S.C. § 5000A(e) with respect to affordable coverage or financial hardship. See 42 U.S.C. § 18022(e)(2) (2010).  Because Hill will be under 30 in 2014 when the requirement takes effect, she will be able to satisfy the health insurance requirement by maintaining a catastrophic care plan.  Because Hill will be able to satisfy the essential health benefits requirement by maintaining a catastrophic plan, Hill has failed to establish that she is or will be injured by Section 1302(e) and, as a result, does not have standing to assert the claim in Count V.[11]

Kinder attempts to assert a new cause of action in Plaintiffs' Response by stating he "joins Samantha Hill in [C]ounts [V, VI, and IX]."[12]  A statement in a response in opposition to a motion to dismiss is not the proper method to amend a complaint to assert a new claim.  I will not consider the merits of Kinder's claims that are not included in the Amended Complaint.

In Count VI, Hill alleges that Section 1501 of the Act is unconstitutional because it will impose a financial penalty upon her "*should* [she] not purchase a federally-mandated health insurance policy."[13]  Defendants again argue that Hill has failed to allege that she has standing to

---

[10]Amended Complaint, Docket No. 16 at 35 (emphasis added).

[11]Hill filed an affidavit in conjunction with her Response.  As discussed above, under a facial challenge I cannot properly consider her affidavit, but even if I did, her qualified language that she does not "want" to purchase health insurance in 2014 does not assert that she will not purchase health insurance and would be unlikely to confer standing.

[12] Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, Docket No. 32 at 11.

[13]Id. at 39 (emphasis added).

assert this claim.  While Hill reasserts her merits argument in her Response, she fails to point to anything in the Amended Complaint that establishes the Section 1501 financial penalty will be imposed upon her.  Hill does not allege in the Amended Complaint that she will not purchase a qualifying policy in 2014.  Instead, Hill asserts that *if* she does not purchase a qualifying health insurance policy, *then* a penalty will be imposed upon her.  Hill does not assert that she will not purchase a qualifying policy in 2014 and, as a result, it is unclear whether a financial penalty will be imposed upon her.  Because it is unclear whether a financial penalty will be imposed upon her, Hill has failed to allege that she will sustain an injury.

In Count IX, Hill argues that the PPACA is unconstitutional because it abrogates her rights under the Missouri Health Care Freedom Act without due process of law.  The Missouri Health Care Freedom Act provides that "no law or rule shall compel, directly or indirectly, any person, employer, or health care provider to participate in any health care system." MO. ANN. STAT. § 1.330(1) (West 2010).  The Missouri Health Care Freedom Act also provides "[a] person or employer may pay directly for lawful health care services and shall not be required by law or rule to pay penalties or fines for paying directly for lawful health care services." MO. ANN. STAT. § 1.330(2) (West 2010).

Hill's assertions in the Amended Complaint simply do not confer standing to assert this challenge because she has not alleged an injury inflicted by the PPACA.  Hill does not allege that she currently does not participate in a health care system, only that she does not have health insurance.  Furthermore, Hill will be able to satisfy the PPACA's essential minimum coverage with catastrophic coverage, the type of insurance she indicates in the Amended Complaint that she would want to purchase under the PPACA.  Finally, because Hill does not allege that she will

not purchase health insurance in 2014 it is uncertain whether she will be assessed a financial penalty under the PPACA.  Accordingly, Plaintiff Hill has failed to allege that she has sustained an injury in order to pursue the claim in Count IX.

A plaintiff "generally must assert [her] own legal rights and interests and cannot rest [her] claim to relief on the legal rights or interests of third parties."  Valley Forge, 454 U.S. at 474. Because Hill has failed to allege that she is or will be personally injured by the provisions she challenges, she does not have standing to assert the claims she pursues in Counts V, VI, and IX and they will be dismissed.

**(d.)    Count VIII**

In Count VIII, Plaintiffs allege that Section 4003 of the PPACA unconstitutionally establishes panels "to determine levels of appropriate treatment for various health care situations."[14]  Plaintiffs argue this violates the autonomy of the doctor-patient relationship and the individual liberty interests of Plaintiffs to make personal medical decisions.  Plaintiffs allege that "even when a patient and their physician determine the best medical treatment for the patient, and even if the patient is willing to pay for the cost of the treatment herself, she is not allowed to receive the medical treatment her physician deems appropriate unless it is also agreed to by the government panel established under PPACA."[15]

Defendants argue that Section 4003 does not have any of the effects alleged by Plaintiffs. Defendants also argue that the task forces addressed in Section 4003 existed prior to the

---

[14] Amended Complaint, No. 16 at 48.

[15] Id. at 49. In their Response Plaintiffs mistakenly label their discussion of the Eighth Cause of Action as the "Ninth Cause of Action."  The discussion following the heading for the Ninth Cause of Action in the Response makes clear that Plaintiffs are discussing Count VIII.

PPACA's enactment and Plaintiffs have failed to allege any injury resulting from the operation of these task forces.

Plaintiffs' claim in Count VIII fails for two reasons. First, Plaintiffs have failed to indicate what part of Section 4003 supports their allegation and I, in my review of the plain language of the statute, have not found any language that supports Plaintiffs' claim that the task forces will prevent a doctor and patient from pursuing a medical treatment plan. The main thrust of Section 4003 as it pertains to the Preventative Services Task Force ("PSTF") is that it "shall review the scientific evidence related to the effectiveness, appropriateness, and cost-effectiveness of clinical preventative services *for the purpose of developing recommendations* for the health care community, and updating previous clinical preventive *recommendations*." 42 U.S.C. § 299b-4(a)(1) (2010) (emphasis added). The PSTF may also provide technical assistance to health care professionals, agencies, and organizations if they "*request* help implementing the Guide recommendations." 42 U.S.C. § 299b-4(a)(3) (2010) (emphasis added). Section 4003 has a similar effect on the Community Preventative Services Task Force ("CPSTF"). The CPSTF shall "review the scientific evidence related to the effectiveness, appropriateness, and cost-effectiveness of community preventative interventions *for the purpose of developing recommendations*." 42 U.S.C. § 280g-10(a) (2010) (emphasis added). Plaintiffs must clearly allege that they have suffered a injury that is "concrete and particularized" and not "conjectural or hypothetical." Lujan, 504, U.S. at 560. There is simply nothing in the plain meaning of the statute's language from which I can conclude that Plaintiffs have alleged a concrete injury arising from the challenged provision.

The second deficiency in Plaintiffs' claim is that they fail to allege any injury resulting

from the operation of either of the task forces addressed in Section 4003.  Section 4003 did not

establish the task forces in question, but amended existing statutes.  Because Plaintiffs fail to

allege an injury from the operation of the task forces, fail to allege an actual injury from Section

4003, and fail to allege a concrete future injury I find that Plaintiffs have failed to establish they

are injured by Section 4003.  As a result, Plaintiffs do not have standing to assert their claim in

Count VIII at this time.[16]

### 2.    *Ripeness*

"Ripeness is peculiarly a question of timing.  Its basic rationale is to prevent the courts,

through premature adjudication, from entangling themselves in abstract disagreements."  Thomas

v. Union Carbide Agr. Products Co., 473 U.S. 568, 580 (1985) (citations and alternations

omitted).  "[T]he fitness of the issues for judicial decision and the hardship to the parties of

withholding court consideration must inform any analysis of ripeness."  Id.  A court must decline

to exercise jurisdiction if "the issue is so premature that the court would have to speculate as to

the presence of a real injury."  Meadows of W. Memphis v. City of W. Memphis, Ark., 800 F.2d

212, 214 (8th. Cir. 1986).

### (a.)    Count III

Count III alleges the PPACA unconstitutionally levies a direct tax upon the State of

Missouri and its citizens.  Plaintiff Keathley on behalf of M.K. alleges that M.K. suffers from

autism and would benefit from behavioral therapy.  Missouri requires insurance companies

---

[16] Plaintiffs also purport to assert a violation of the First Amendment of the United States Constitution in Count VIII.  Plaintiffs do not identify what part of Section 4003 violates the First Amendment and its plain language does not support a finding that Plaintiffs have alleged a concrete injury to their First Amendment rights by Section 4003.

-15-

insuring Missouri residents to provide coverage for the diagnosis and treatment of autism spectrum disorders.  Mo. Rev. Stat. § 376.1224 (2) (West 2010).[17]  Keathley alleges that Section 1311(d)(3)(B)(ii) of PPACA[18] will impose a fee upon Missouri "because Missouri requires private health insurance companies to offer more coverage than PPACA's mandated coverage."  Keathley argues she "[has] the constitutional right to enjoy the benefits of Missouri citizenship without those benefits being directly subject to a penurious tax levied by the federal government."  Plaintiffs' Response expands on this argument to assert that Keathley is not asserting an injury as a Missouri taxpayer but is injured by the "tax" because it "*may* well force Missouri to discontinue [the autism behavioral therapy] benefits" which is an "obvious *threat*" to Keathley and M.K.[19]  Keathley argues further that the "imposition of [a] sur-tax on Missouri...will *likely* destroy [Keathley and M.K.'s] coverage.[20]  Plaintiffs also argue their claim is ripe because I "must consider PPACA as it now reads-not as it might someday be supplemented by regulations" and that as currently drafted, nothing in PPACA provides a benefit similar to the benefit Keathley and M.K. currently have.[21]

Defendants move to dismiss Count III arguing that subject matter jurisdiction is lacking

---

[17]The Amended Complaint asserts the maximum benefit available is $36,000 and cites Missouri Senate Bill 167 from the 2009 legislative session. The statute indicates the maximum benefit available is actually $40,000. Mo. Rev. Stat. § 376.1224(5) (West 2010).

[18]42 U.S.C. § 18031 (2010).

[19] Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, Docket No. 32 at 6 (emphasis added).

[20] Id. at 7 (emphasis added).

[21] Id.

because Plaintiffs' claim is not ripe for judicial consideration.  Defendants argue that Count III is

not ripe because Section 1302(b)(1) does not define what "essential health benefits" are and

requires the Secretary of Health and Human Services to define the term.[22]   Because neither

proposed nor final regulations have been promulgated, Defendants argue it is not possible to

know whether behavioral therapy for autism will be included in the definition of "essential health

benefits" and, as a result, Plaintiffs' claim in Count III is not ripe for judicial consideration.

A claim is not ripe if I must speculate as to the existence of an injury.  Here, Count III

is not ripe because it cannot be determined whether behavioral therapy will be included in the

definition of "essential health benefits" and it is not possible to predict how Missouri will

respond to the hypothetical exclusion of behavioral therapy for children with autism.  There are

numerous scenarios in which Keathley and M.K. may or may not be injured and various forms in

which the potential injuries could manifest.[23]  It is unclear at this time whether the therapy in

question will be included in the definition of "essential health benefits."  I will not engage in

speculation of how Missouri may respond to hypothetical definitions of essential health benefits

which may or may not give rise to Keathley and M.K. sustaining an injury.  As a result, this

claim is not ripe for judicial consideration and I will dismiss Count III because I lack subject

matter jurisdiction.

Count III must also be dismissed for lack of standing.  Keathley asserts that Section 1311

---

[22] 42 U.S.C. § 18022(b)(1) (2010).

[23]For example, if the therapy is not included in the definition, Missouri may elect to
continue to require the coverage and pay the fine or Missouri may elect to no longer require the
coverage.  Alternatively, if the therapy is included in the definition of "minimum health
benefits," Keathley and M.K. will not suffer a loss of coverage.

violates the Tenth Amendment.  As discussed above, "a private party does not have standing to assert that the federal government is encroaching on state sovereignty in violation of the Tenth Amendment absent the involvement of a state or its instrumentalities."  <u>Hacker</u>, 565 F.3d at 526. The State of Missouri is not a party to this action, and Keathley and M.K. lack standing to assert a violation of the Tenth Amendment in Count III.

   **(b.)   Count IV**

   Count IV alleges Section 2001 of the Act will force Missouri citizens that currently have private insurance to enroll in Medicaid, with injurious effects on enrollees, health-care providers, and Missouri taxpayers.[24]  Plaintiffs allege Missouri taxpayers will be injured by paying increased taxes in order to pay for the medical care for the newly enrolled individuals.  Plaintiffs argue Missouri will only be able to pay this additional cost by increasing the taxes paid by Missouri taxpayers.  Plaintiffs further allege that the Missouri Constitution prohibits Missouri from raising state taxes without conducting a vote by the citizens of Missouri and that no such vote has taken place.  In sum, Plaintiffs argue the PPACA is unconstitutional because it will "require" the State of Missouri to violate the Missouri Constitution.  Plaintiffs contend this is not a mere speculative tax increase but "a specific [quantified] injury alleged in mathematical detail over the space of two full pages."[25]

   A claim is not ripe if I must speculate as to the existence of an injury.  <u>Meadows of W.</u>

---

   [24] Because none of the Plaintiffs assert that they are or would become enrolled in Medicaid or that they are healthcare providers, Plaintiffs lack standing to assert these claims in these capacities and I decline to address the merits of these arguments.

   [25]Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, Docket No. 32 at 8.

Memphis, 800 F.2d at 214.  I find that Plaintiffs have failed to establish that this claim is ripe for judicial consideration.  Assuming, without deciding, that Plaintiffs would have standing to assert this claim should such an increase in taxes actually occur, it is not at all sufficiently certain that Missouri will raise taxes in order to pay for additional Medicaid spending.  Even less certain is whether Missouri would raise taxes in a manner that would constitute a violation of the Missouri Constitution.  Plaintiffs do not cite any provision of the Act that indicates a state *must* pay for any additional Medicaid spending in a manner that violates that state's constitution.  Instead, Plaintiffs speculate as to the manner in which Missouri will pay for a Medicaid spending increase.  Reliance on such speculation prevents this claim from being ripe for judicial consideration.  As a result, I will dismiss Count IV because it does not present a live case and controversy.

Count IV must also be dismissed for lack of standing.  Plaintiffs allege Section 2001 violates the Tenth Amendment.  As discussed above, "a private party does not have standing to assert that the federal government is encroaching on state sovereignty in violation of the Tenth Amendment absent the involvement of a state or its instrumentalities."  Hacker, 565 F.3d at 526. The State of Missouri is not a party to this action, and Plaintiffs lack standing to assert a violation of the Tenth Amendment in Count IV.

### 3. *Mootness*

A federal court does not have jurisdiction to hear a case that is moot.  Hickman v. State of Mo., 144 F.3d 1141, 1142 (8th Cir. 1998).  A case is considered moot when it "no longer presents an actual, ongoing case or controversy." Id. (quoting Marine Equip. Mgmt. Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993).

-19-

_

### (a.)    Count VII

Plaintiffs Morris, Robert Osborn, and Geraldine Osborn allege in Count VII that Section 3201 of the Act unconstitutionally reduces Medicare Part C (or "Medicare Advantage") coverage in violation of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment.  Each of these Plaintiffs are eligible for Medicare Advantage.  Plaintiffs argue Section 3201 reduces Medicare Advantage supplemental coverage by eliminating the Medicare Advantage Stabilization Fund.  Plaintiffs assert that this prohibition of Medicare Advantage coverage applies to all Missouri citizen except for individuals described in Section 3201(c)(3)(B) of the PPACA, who Plaintiffs allege live in certain qualifying counties of Florida.  Plaintiffs allege they will be unconstitutionally denied access to Medicare Advantage based on where they live.

Defendants argue Plaintiffs' claim should be dismissed because the challenged provision has been repealed in its entirety by Section 1102 of the Health Care and Education Reconciliation Act of 2010.  Pub. L. No. 111-152, 124 Stat. 1029, 1040 (Mar. 30, 2010).  In their Response, Plaintiffs assert a new basis for their claim and attempt to challenge the provision that replaced Section 3201 by arguing the new provision "perpetrates the same improper and unequal treatment...as did the original version."[26]  As discussed above, asserting a new claim in a response is not a procedurally recognized basis for amending a complaint.[27]

_____

[26] Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, Docket No. 32 at 12.

[27]Even if Plaintiffs were to amend their complaint to assert a challenge to Section 1102, they would not have standing to pursue the claim.  Plaintiffs' allegation is based on the premise that the counties they live in are not classified as qualifying counties and, as a result, they will receive disparate treatment under the Act. The Centers for Medicare & Medicaid Services

A case is considered moot when it "no longer presents an actual, ongoing case or controversy." Id. Because the statute challenged by Plaintiffs has been repealed, Count VII no longer presents a live case or controversy and must be dismissed.

**B.     Failure to State a Claim Upon Which Relief May be Granted**

Because I have found that I do not have subject matter jurisdiction over any of the Counts in Plaintiffs' Amended Complaint, I do not reach the merits of Defendants' argument under Rule 12(b)(6).

Accordingly,

**IT IS HEREBY ORDERED that** Defendants' Motion for Leave to File Supplementary Memorandum in Support of Motion to Dismiss [#35] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendants' Motion to Dismiss [#30] is **GRANTED**.

**IT IS FINALLY ORDERED that** Plaintiffs' Amended Complaint is **DISMISSED**.

Dated this 26th day of April, 2011.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

---

announced on April 4, 2011 that the counties Morris and the Osborns live in are qualifying counties.   As a result, Plaintiffs would not have standing to pursue this claim even if they were to properly amend their complaint.  This presents a timely example of why a court must exercise judicial restraint and only hear cases presenting a live case and controversy.  Plaintiffs based their claim on speculation and a hypothetical scenario that proved to be false.